## THOMAS L. CLARKE *v.* JAMES S. PEAK.

15   407
c112  362

The qualities of mortgagee and owner of the same thing cannot exist in the same person at the same time.

Although the purchase of property by the mortgagee extinguishes the mortgage, yet there is nothing illegal in the insertion of a condition in the sale, by which it is arranged that the price is not to be collected until the mortgage has been satisfied.

The courts of this State are vested with an equitable jurisdiction in cases where the laws are silent.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.
*Hunton & Miller,* for plaintiff and appellant. *John M. Chilton,* for defendant.

BUCHANAN, J.   This suit is brought upon a note held by plaintiff as endorsee, which reads as follows :

" On or before the first day of January, 1852, I promise to pay to *James Clarke* or order, seven thousand four hundred and twenty dollars, being the third and last payment on negroes bought of him.   This note is not to be collected until said *Clarke* complies or satisfies a mortgage I hold on the above named negroes, given by *James Clarke* and *William Clarke,* this the seventeenth day of April, 1849.                                              JAMES S. PEAK."

(Endorsed)   " Pay *Thomas L. Clarke,* or order.

JAMES CLARKE."

Defendant pleads, that the suspensive condition contained in said note has not been fulfilled, and that this suit is premature.

The mortgage mentioned in the body of the note was granted on a portion of the identical negroes sold by *James Clarke* to the defendant.   The mortgage is in evidence.   It has date April 15th, 1840—nine years previous to the sale and note,—and recites as follows : " Whereas *James Clarke* and *William A. Clarke* have purchased from *James S. Peak* two hundred shares of stock in the Real Estate Bank of the State of Arkansas, and have executed a mortgage in favor of the bank, to secure the said stock, upon property of which the title is in part imperfect, by reason whereof the bank has refused to release *Peak* from his responsibilities as stockholder ; and whereas *Peak* has authorized the *Clarkes* to use his credit in bank as stockholder for the purpose of drawing money from the said bank on the said two hundred shares of stock—the said *James* and *William Clarke* sell to said *Peak* twenty male and female slaves named, *conditioned* that *if the said Clarkes shall well and truly secure, save harmless, and indemnify said Peak against all and every responsibility, liability, risk and charge which said Peak may have incurred in any wise, or may hereafter incur in any manner, by reason of the drawing of any money by said Clarkes out of said Real Estate Bank, on said stock* so purchased by said *Clarkes* from said *Peak,* before said Real Estate Bank have acted on, received and accepted the said mortgage so made by said *Clarkes* to said Real Estate Bank, and before the said bank shall have released the said *Peak* from responsibility as stockholder aforesaid ; *and if the bank shall receive the mortgage given by the Clarkes, and shall release Peak from liability upon the said stock, then this mortgage to be void.*

It is proved that the *Clarkes* have not drawn any money from the Real Estate Bank upon the two hundred shares of stock in question.   This is proved by the

CLARKE
*v.*
PEAK.

Receiver of the bank, a witness of defendant, examined under commission February 11th, 1859, nineteen years after the mortgage, ten years after the date, and seven years after the maturity of the note.

It is proved that the bank has never accepted the *Clarkes* as stockholders in place of *Peak*, for the 200 shares.

And it is not proved that *Peak* has been subjected to any responsibility or liability by reason of his subscription of said 200 shares of stock.

The argument of plaintiff's counsel is :

I. That the mortgage of 15th April, 1840, is merged in the sale of 17th April, 1849.

II. The condition of the mortgage is fulfilled ; *Clarke* having drawn no money upon his stock, and the bank being in liquidation, he can draw none.

III. That the sale of stock by *Peak* to *Clarke* is void for want of the consent of the bank to the transfer—an indispensable prerequisite by the charter of the bank, 31st section, and its by-laws, sections 9, 10, 18 and 19.

I. On the first point. It is no doubt correct doctrine, that the quality of mortgagee and owner of the same thing cannot exist in the same person at the same time. One of the modes of extinguishment of a mortgage recognized by law, is the acquisition by the mortgagee of the ownership of the thing mortgaged. Civil Code, Art. 3374.

But the defence of the appellee does not rest so much upon a mortgage as upon a suspensive condition inserted in the sale, by consent of parties, and which took the place of the pre-existing mortgage security. We perceive nothing illegal in this arrangement. The mortgage is a necessary part of the defendant's case merely to explain the stipulations in the agreement to sell and in the note sued upon.

II. The counsel of plaintiff and of defendant, in argument, give different interpretations to the conditions of the mortgage of the 15th, April, 1840. According to the former, the condition is satisfied by a compliance with either of the clauses of that condition which he treats as *alternative ;* while the latter contends that they are cumulative, and that it is not only incumbent on plaintiff to show, (as he has done,) that the *Clarkes* have not drawn any money from bank on the credit of the stock in question, but that *Peak* has been released from all liability as a stockholder.

We are not prepared to adopt the construction of the plaintiff's counsel. It appears to us clearly to have been in the contemplation of the parties, not only that *Peak* should not be made liable for any sums drawn by *Clarke* upon the stock while standing in *Peak's* name, (as was authorized by the agreement between the parties, of the 14th March, 1840,) but that the transfer of stock was to be consummated by the action of the Board of Directors approving the securities for the 200 shares of stock, offered by the *Clarkes*, and the consequent substitution of the *Clarkes* for *Peak* upon the books of the bank, as holder of those shares of the capital stock ; the effect of which would have been, in the language of section 9 of the by-laws of the bank, " a discharge and release, both in person and property, from all (*Peak's*) liability by virtue of his previous ownership of stock."

But, at the same time that this construction appears to be the true one, the evidence shows us that a perfect transfer of this stock, which would operate as above stated, has become an impossibility without any fault of plaintiff. For the 31st section of the Charter of the Real Estate Bank of the State of Arkansas

provides as follows : "And whenever application shall be made by a stockholder, to transfer his stock and be discharged, such transfer and discharge may take place upon the new stockholder's furnishing mortgage to the satisfaction of at least a majority of the Directors; and in all such cases of transfer and discharge, the vote shall be taken by yeas and nays."

Now, the record shows, that the Real Estate Bank of Arkansas was in the hands of a Receiver, and in liquidation, for several years previous to the institution of this suit. There is not, therefore, nor has there been for years past, a Board of Directors to act upon *Peak's* application to transfer his stock and to sanction the mortgage security offered by the proposed transferree.

The position of plaintiff is thus seen to be a hard one. The defendant is in the possession and enjoyment of valuable and productive property, sold to him by plaintiff, of which the price is many years past due. The condition attached to the payment of that price is, in substance, a transfer of bank stock, which has become, by a change in the administration of the bank, a legal impossibility. *Nemo tenetur ad impossibile.* Yet, the very condition of the Bank, which has created this impossibility, makes it probable that the liability of *Peak*, as subscriber of the 200 shares of bank stock in question, may be attended with pecuniary loss to him. We have no doubt that the equitable jurisdiction of the courts of the State of Arkansas would afford a relief and remedy to the parties. And the courts of this State are also vested with an equitable jurisdiction in cases where the law is silent. C. P. Art. 130. Under the prayer for general relief contained in plaintiff's petition, we will give plaintiff judgment; only to be executed, however, upon his tendering security to defendant against the contingency of defendant's being made liable upon his subscription of 200 shares of stock sold to plaintiff. The parties have themselves fixed a measure of this contingent liability, to-wit, seven thousand dollars.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed; and that plaintiff recover of defendant seven thousand dollars, with interest at the rate of six per cent. per annum from April 17th, 1849, until paid, and costs in both courts; and it is further decreed, that execution of this judgment be stayed until plaintiff shall have filed in court a bond with security to the satisfaction of defendant, or of the Fourth District Court of New Orleans, in the penal sum of seven thousand dollars, conditioned to save the defendant harmless from liability under and by virtue of his subscription to 200 shares of the capital stock of the Real Estate Bank of the State of Arkansas, sold by him to plaintiff on the 17th day of April, 1849, as per agreement filed herein.

LAND, J., absent.